# UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
### PANAMA CITY DIVISION

GLORIA J. WILLIAMS,

      Plaintiff,

v.                                  Case No.  5:18-cv-158-MJF

ANDREW M. SAUL,[1]

      Defendant.

_____/

## MEMORANDUM OPINION AND ORDER

Plaintiff Gloria J. Williams brings this action under 42 U.S.C. § 405(g) and seeks review of a final adverse decision of the Commissioner of the Social Security Administration. The Commissioner denied her applications for a period of disability, Disability Insurance Benefits (DIB), and Supplemental Security Income (SSI). Plaintiff timely pursued and exhausted her administrative remedies. After careful consideration of the entire record, the decision of the Commissioner is affirmed.[2]

---

[1] In June 2019, Andrew M. Saul became the Commissioner of the Social Security Administration. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul is automatically substituted as a party. Fed. R. Civ. P. 25(d).

[2] After the parties consented, the district court referred this action to the undersigned magistrate judge to conduct all proceedings and enter final judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (*See* Doc. 15).

# I. Procedural History

On July 17, 2015, Plaintiff protectively filed: (1) a Title II application for a period of disability and disability insurance benefits; and (2) an application for supplemental security income. (Tr. 10). In her applications, Plaintiff alleged that her disability began March 14, 2014. (*Id.*). Her claims were initially denied on August 27, 2015, and upon reconsideration on October 29, 2015. Thereafter Plaintiff requested a hearing before an administrative law judge ("ALJ"). (*Id.*). On May 12, 2017, Plaintiff, represented by counsel, appeared before the assigned ALJ at a video hearing. (*Id.*). On August 16, 2017, the ALJ issued a decision in which she found Plaintiff was not under a disability. (Tr. 10-22). Plaintiff appealed to the Appeals Council, and, on May 9, 2018, the Appeals Council denied Plaintiff's request for review. (Tr. 1-6). Thus, the decision of the ALJ stands as the final decision of the Commissioner, subject to review in this court. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1262 (11th Cir. 2007). This appeal followed.

# II. Findings of the ALJ

In denying Plaintiff's claims, the ALJ made the following findings relevant to the issues raised in this appeal:

(1)   Plaintiff met the insured status requirement of the Social Security Act through March 31, 2019.

(2)    Plaintiff had not engaged in substantial gainful activity since March 14, 2014, the alleged onset date.

(3)    The claimant had the following severe impairments: depression, anxiety, borderline intellectual functioning, personality disorder not otherwise specified, degenerative disc disease of the cervical spine, and obesity. The ALJ found that Plaintiff's hypertension, dyslipidemia, pre-diabetes, uterine hypoechaic masses, low potassium, and gastroesophageal reflux disease were non-severe impairments. The ALJ found that fibromyalgia and joint disease other than the cervical spine were not medically determinable impairments.

(4)    Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

(5)    Plaintiff had a residual functional capacity (RFC) to perform medium work, as defined in 20 C.F.R. Part 404.1567(c) and 416.967(c), except:

> a. she can frequently balance, stoop, crawl, and climb ramps and stairs;

> b. she can never climb ladders, ropes, or scaffolds or work at unprotected heights;

c. she is limited to performing simple, routine tasks and making simple work-related decisions; and

d. she can frequently interact with co-workers and can have occasional contact with the public.

(6)     Plaintiff was "capable of performing past relevant work as a cleaner, housekeeping."

(7)     The claimant had not been under a disability, as defined by the Social Security Act, from March 14, 2014, through the date of the ALJ's decision.

## III.  Standard of Review

Review of the Commissioner's final decision is limited to determining whether the decision is supported by substantial evidence from the record and was a result of the application of proper legal standards. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied."); *see also Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987). "A determination that is supported by substantial evidence may be meaningless . . . if it is coupled with or derived from faulty legal principles." *Boyd v. Heckler*, 704 F.2d 1207, 1209 (11th Cir. 1983), *superseded by statute on other grounds as stated in Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1214 (11th Cir. 1991).

As long as proper legal standards were applied, the Commissioner's decision will not be disturbed if, in light of the record as a whole, the decision appears to be supported by substantial evidence. 42 U.S.C. § 405(g); *Falge v. Apfel*, 150 F.3d 1320, 1322 (11th Cir. 1998); *Lewis*, 125 F.3d at 1439; *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).

Substantial evidence is more than a scintilla, but not a preponderance; it is "such relevant evidence as a reasonable mind would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 217 (1938)); *Lewis*, 125 F.3d at 1439. The reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted). Even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if supported by substantial evidence. *Sewell v. Bowen*, 792 F.2d 1065, 1067 (11th Cir. 1986). A court "'must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence.'" *Schink v.Comm'r of Soc. Sec.*, ___ F.3d ___, 2019 WL 4023639, at *6 (11th Cir. Aug. 27, 2019) (citing *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986)).

The Act defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability the physical or mental impairment must be so severe that the claimant is not only unable to do her previous work, "but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A). Pursuant to 20 C.F.R. § 404.1520(a)-(g),[3] the Commissioner analyzes a disability claim in five steps:

1.     If the claimant is performing substantial gainful activity, she is not disabled.

2.     If the claimant is not performing substantial gainful activity, her impairments must be severe before she can be found disabled.

3.     If the claimant is not performing substantial gainful activity and she has severe impairments that have lasted or are expected to last for a continuous period of at least twelve months, and if her impairments meet or medically

---

[3] In general, the legal standards applied are the same regardless of whether a claimant seeks DIB or SSI, but separate, parallel statutes and regulations exist for DIB and SSI claims. *See* 20 C.F.R. §§ 404, 416. Therefore, citations in this order should be considered to refer to the appropriate parallel provision. The same applies to citations of statutes or regulations found in quoted court decisions.

equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4.     If the claimant's impairments do not prevent her from doing her past relevant work, she is not disabled.

5.     Even if the claimant's impairments prevent her from performing her past relevant work, if other work exists in significant numbers in the national economy that accommodates her RFC and vocational factors, she is not disabled.

The claimant bears the burden of establishing that she suffers from a severe impairment that keeps her from performing her past work. 20 C.F.R. § 404.1512. If the claimant establishes such an impairment, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform. *MacGregor*, 786 F.2d at 1052. If the Commissioner carries this burden, the claimant must then prove she cannot perform the work suggested by the Commissioner. *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987).

## IV.     Plaintiff's Medical History and Employment History

### A.     <u>Medical History</u>

Results from a July 2006 Magnetic Resonance Imaging ("MRI") scan showed "mild disc degeneration at C5-6 with a small posterior disc protrusion extending

beyond smaller spurs that was very close to cord with no displacement or complication." (Tr. 17, 550). It also showed a smaller posterior disc bulge or minor protrusion at C6-7, causing mild deformity of the thecal sac, but not contacting the cord. (*Id.*). There were also subtle disc bulges at C4-5 and C7-T1. (*Id.*). The scan also indicated that there was a minimal bulge at C3-4. (*Id.*). Plaintiff has not received medical treatment for this impairment. (*Id.*, Tr. 48).

In February 2014, Plaintiff presented to the Bay County Health Department for blood pressure medication refills. Plaintiff reported a history that included a back and a left knee injury, but she denied any numbness, tingling, depression, or difficulty with sleeping. (Tr. 618). She also did not report any neck pain. Plaintiff was not prescribed anything for pain. (Tr. 618-23). In May 2014, Plaintiff denied any muscle or joint problems, pain, swelling, tingling, or numbness. (Tr. 614-15). These records reflect that she had no joint abnormalities or swelling. She had full range of motion and full strength. (Tr. 616). In July 2014, she reported swelling in her fingers and feet; however, she denied muscle or joint problems, muscle pain, numbness, or tingling. (Tr. 611). She also had no gross motor dysfunction and a normal mental status. (Tr. 612). These records also indicate that she had no joint abnormalities or swelling and that she had full range of motion and full strength. (*Id.*). In November 2014, she similarly denied any musculoskeletal or psychiatric

problems. (Tr. 608). Plaintiff's additional exam results remained normal. (Tr. 606-08).

In January 2015, Plaintiff received care from St. Andrew Community Medical Center. She reported occasional numbness and tingling in her hands and feet, but she did not report any neck pain. (Tr. 565-67). She denied muscle weakness, instability, or swelling. (Tr. 566). She denied any anxiety or depression. (Tr. 567). Upon exam, Plaintiff had a full range of motion, full strength in her upper and lower extremities, and intact hand grasp. (Tr. 567). In subsequent appointments in 2015 and 2016, Plaintiff continued to have normal exams. (Tr. 558-59, 561-63, 664-65). Plaintiff took only Tylenol for chronic pain. (Tr. 558, 664, 671, 678, 681, 684, 686, 688). In June 2016, Plaintiff was prescribed Vistaril for sleep. (Tr. 678). The ALJ noted that the records reflect that at her June 2016 appointment, Plaintiff's assessments included anxiety and depression for the first time. (Tr. 679). She was prescribed Celexa for depression and anxiety.[4] (Tr. 678, 681, 684, 686, 688). In November 2016, Plaintiff reported that she was doing well and had no new issues. She reported some depression but indicated that it was being managed by the Celexa. (Tr. 671).

---

[4] The undersigned notes that Plaintiff's medical records indicate that Plaintiff began taking Celexa as early as July 7, 2015; however, the records do not indicate diagnoses of depression and anxiety until her June 2016 appointments. (Tr. 681, 684, 686, 688).

She stated that she should talk to someone about how to deal with life stressors including the death of her mother. (*Id.*).

In July 2015, Dr. Brian Boehman, Ph.D., conducted a psychological evaluation of Plaintiff as part of her vocational rehabilitation. During the mental status exam, Plaintiff could perform simple arithmetic, simple subtraction, multiplication, and division. (Tr. 589). She did not struggle with immediate recall and was successful in delayed recall. (*Id.*). She was able to recall 2 of 3 words after a five-minute delay. She also correctly listed 6 digits forward and four digits backwards. (*Id.*). Plaintiff's mood was noted to be calm and friendly, but she exhibited signs of elevated anxiety through the evaluation. (*Id.*). Plaintiff's conversation was normal and appropriate, and she did not exhibit any confusion in her thought process. (*Id.*).

Dr. Boehman also administered the Wechsler Adult Intelligence Scale-Fourth Edition and the Woodcock John II Test of Achievement. (Tr. 589-92). On the Wechsler test, Plaintiff obtained a verbal comprehension score of 80 (low average); a perceptual reasoning score of 73 (borderline); a working memory score of 86 (low average); a processing speed score of 68 (extremely low); and a full-scale IQ score of 72 (borderline). (Tr. 590). On the Woodcock Test, Plaintiff obtained a score in the average range in broad reading and broad written language. (Tr. 592). She scored

in the low average range in broad mathematics. (*Id.*). When compared to others at her age level, Plaintiff's overall level of achievement was average. (*Id.*).

Dr. Boehman also administered the Woodcock Johnson III Test of Cognitive Abilities to assess Plaintiff's executive processing ability. (Tr. 590, 592-93). Plaintiff scored in the low range in long-term retrieval and process speed; the low average range in verbal ability, cognitive efficiency, comprehension-knowledge, and auditory process; and the average range in short-term memory. (Tr. 592). Dr. Boehman administered the Wechsler Memory Scale-Fourth Edition. (Tr. 590, 593-94). Plaintiff scored in the extremely low range in auditory and immediate memory; the borderline range in visual memory and delayed memory; and the low average range in visual working memory. (Tr. 593).

Plaintiff also took the Million Clinical Multiaxial Inventory-Third Edition test. (Tr. 590, 594). Dr. Boehman noted that Plaintiff's response style may indicate a tendency to magnify illness, an inclination to complain, or feelings of extreme vulnerability associated with a current episode of turmoil. (Tr. 594). He indicated that her scaled scores may be somewhat exaggerated. (*Id.*). Plaintiff's profile indicated that she was markedly dependent, anxious, and depressed. (Tr. 594). Plaintiff also took the Beck Anxiety Inventory and the Beck Depression Inventory and expressed a severe level of anxiety and a moderate level of depression. (Tr. 590, 595).

Dr. Boehman diagnosed Plaintiff with major depressive disorder, recurrent, severe, without psychotic features; generalized anxiety disorder; and unspecified personality disorder. (Tr. 595). Dr. Boehman stated that Plaintiff's psychological functioning may impact her functioning in social and occupational environments. He stated that given Plaintiff's age and physical issues, a less physically challenging position would better fit her job needs. (Tr. 596). He noted that if Plaintiff was under stress, she may claim that simple responsibilities are too demanding for her. (*Id.*). Dr. Boehman noted that confidence in Plaintiff's ability to assume self-care may be fostered through a supportive attitude and a time-limited focus with explicit and constructive instruction to engage in behavioral changes. (*Id.*). He encouraged Plaintiff to seek counseling for her depression and anxiety.

Plaintiff also was seen by three State Agency consultants. In October 2015, State Agency medical consultant Dr. Suzanne Johnson, D.O., completed a "Physical Residual Functional Capacity Assessment." (Tr. 169-71). Dr. Johnson opined that Plaintiff could lift and/or carry 50 pounds occasionally and 25 pounds frequently; stand and/or walk for about 6 hours in an 8-hour workday and sit for about 6 hours in an 8-hour workday; frequently balance, stoop and crawl; and climb ramps, stairs, ladders, ropes, and scaffolds. (Tr. 169-71).

In August 2015, State Agency psychological consultant Dr. Maurice Rudmann, Ph.D., completed a "Psychiatric Review Technique Form." (Tr. 134-36).

Dr. Rudmann opined that Plaintiff had mild restrictions on activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and no repeated episodes of decompensation. (Tr. 134). Dr. Rudmann also completed a "Mental Residual Functional Capacity Assessment." (Tr. 137-39). Dr. Rudmann indicated that Plaintiff was moderately limited in her ability to: understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; complete a normal workday and work week without interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; and respond appropriately to changes in the work setting. (*Id.*).

In October 2015, State Agency psychological consultant Dr. Keith Bauer, Ph.D., also completed a "Psychiatric Review Technique Form" and a "Mental Residual Functional Capacity Assessment," Dr. Bauer concurred with Dr. Rudmann's findings. (Tr. 167-68, 171-73).

### B.     Employment History

The ALJ found that Plaintiff had past relevant work as a cleaner, housekeeping. The Vocational Expert (VE) testified that this job required light exertion with a specific vocational preparation of 2. (Tr. 21, 81).

## C.    <u>Relevant Hearing Testimony</u>

At Plaintiff's hearing, held on May 12, 2017, Plaintiff testified that she had tried to obtain a GED, but she did not pass. (Tr. 51). She had completed the eleventh grade. (Tr. 50). Plaintiff also testified that she has difficulty with math but she is capable of doing simple math. Plaintiff stated she could make change and manage her money jointly with her husband. (Tr. 51-52). Plaintiff testified that she could read pretty well, but later opined that she was "not the best reader." (Tr. 52, 54). She stated that she has some trouble with words in a newspaper. (Tr. 55).

As for her physical impairments, Plaintiff testified that she had swelling and tingling, muscle spasms, and pain in her hands. (Tr. 50). Plaintiff stated that she did not have trouble picking up and holding onto objects, however. (*Id.*).  She had pain from head to toe, including: spasms and pain in her neck that radiated to her shoulders and arms. (Tr. 63-64). She has swelling in her knees and pain in her knees and hips. (Tr. 66). Plaintiff testified that she had bone spurs that caused pain in her foot. When her foot bothers her, Plaintiff uses a cane. (Tr. 72). Although Plaintiff could not recall how often she used the cane, she indicated that she last used the cane one month prior to the hearing. (Tr. 72). Plaintiff has custom orthotics made for her shoes. (Tr. 72-73). Plaintiff also testified that she has chest pains all of the time. (Tr. 74).

Plaintiff stated that she did not have problems sitting, but she could sit in a chair for 10-15 minutes before she had to stand up and move around. (Tr. 71). She estimated she could stand in one place for 10-15 minutes before sitting down. (Tr. 69). She testified that she could walk for approximately 10 minutes. (Tr. 70).

As for her psychological symptoms, Plaintiff testified that she suffered from depression, anxiety, panic attacks, paranoia, and has trouble sleeping. (Tr. 74). Plaintiff testified she could not handle heights, as heights caused anxiety and panic attacks. (Tr. 62, 74-75). Plaintiff testified that her panic attacks have worsened over the years. She stated that these panic attacks last as long as the problem that makes her anxious. (Tr. 365).

A Vocational Expert (VE) also testified at the hearing. As noted above, the VE testified that Plaintiff's previous job of "cleaner, housekeeping" required light exertion with an SVP of 2. (Tr. 21, 81). The ALJ asked the VE to consider whether an individual could perform Plaintiff's past work if the person:

(1) was the same age, had the same education, and past work experience as Plaintiff;

(2) was limited to medium work;

(3) could climb ramps and stairs frequently;

(4) never climb ladders, ropes, or scaffolds;

(5) balance, stoop, and crawl frequently;

(6) could never work at unprotected heights;

(7) limited to performing simple, routine tasks;

(8) could have frequent contact with coworkers, but can have only occasional contact with the public; and

(9) is limited to simple, work-related decisions.

(Tr. 81-82, 83).[5] The VE testified that such a person would be able to perform Plaintiff's past work. (Tr. 82, 84-85). The VE testified that there were other jobs in the national economy that would accommodate such limitations, including: (1) packager, hand (medium with SVP of 2); (2) packer, agricultural (medium with SVP 2); and (3) cook helper (Medium with SVP 2). The ALJ then asked the VE to consider a person with the same limitations as the previous hypothetical except that the individual is limited to light work. The VE testified that there were jobs that would accommodate these limitations in the national economy, including: (1) marker, (light with SVP 2); (2) checker I (light with SVP 2); (3) router (light with SVP 2).

Plaintiff's counsel also asked the VE hypotheticals. Plaintiff's counsel asked the VE to consider the ALJ's first hypothetical with the added limitation that the individual required a sit-stand option. (Tr. 85-86). The VE testified that the jobs

---

[5] The ALJ initially limited the hypothetical individual to "frequent interaction with coworkers, but only occasional interaction with public." The ALJ amended the hypothetical from interaction to contact. (Tr. 83).

identified did not have a sit-stand option. (Tr. 86). Counsel asked the VE to consider the second hypothetical (a person limited to light exertion) and asked the VE to consider the added limitation of a sit-stand option. (*Id.*). The VE testified that these jobs did not have a sit-stand option. (*Id.*). Counsel asked the VE to consider whether there would be an impact on employability if an individual was off task 20 percent of the time. (*Id.*). The VE testified that being off task 20 percent of the time would preclude competitive employment. (*Id.*). Counsel asked the VE to consider whether there would be an impact on employability if an individual had two unexcused absences on a regular, recurring basis per month. The VE testified that this would preclude employment. (*Id.*).

## V.    Discussion

Plaintiff raises several issues on appeal, including: (1) whether the ALJ erred in evaluating fibromyalgia and hypertension; (2) whether the ALJ improperly determined that Plaintiff's impairments did not meet or were not medically equal to the severity of one of the listed impairments; (3) whether the ALJ erred by not reopening a prior determination; (4) whether the ALJ erred in determining Plaintiff's residual functional capacity; (5) whether the ALJ improperly discredited Plaintiff and other witnesses' testimony; (6) whether the ALJ erred in determining Plaintiff could perform her past work; (7) whether the ALJ erred in not developing the record;

(8) whether new evidence is sufficient for a remand; and (9) other miscellaneous arguments.

## A. **Whether the ALJ erred in evaluating Hypertension and Fibromyalgia**

Plaintiff alleges that the ALJ erred in determining that Plaintiff's hypertension was controlled, and that fibromyalgia was not a medically determined impairment. (Doc. 20 at 7, 8, 9).

### 1. *Hypertension*

To the extent the ALJ found that Plaintiff's hypertension was not severe because it had a minimal effect on Plaintiff's daily activities and was controlled by medication, Plaintiff has not established error. At step two of the analysis, the ALJ must consider if the claimant has a severe impairment or combination of impairments. 20 C.F.R. § 404.1520; *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011); *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987). "An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." *Schink*, 2019 WL 4023639, at *12 (citing 20 C.F.R. § 404.1522(a)); *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004). The regulations define basic work activities to include the following:

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) Capacities for seeing, hearing, and speaking; (3) Understanding, carrying out, and

remembering simple instructions; (4) Use of judgment; (5) *Responding appropriately to supervision, co-workers and usual work situations*; and (6) Dealing with changes in a routine work setting.

*Schink*, 2019 WL 4023639, at *12 (citing 20 C.F.R. § 404.1522(b)).

If the ALJ concludes that the claimant's alleged impairment or combination of impairments are not severe, the ALJ must end the analysis and find that the claimant is "not disabled." 20 C.F.R. § 404.1520; *see Schink*, 2019 WL 4023639, at *12 (citing *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986)); *Jamison*, 814 F.2d at 588 (observing that step two "acts as a filter; if no severe impairment is shown the claim is denied").

To proceed to step three, the ALJ need only identify one severe impairment. *See Flemming v. Comm'r of the Soc. Sec. Admin.*, 635 F. App'x 673, 675 (11th Cir. 2015) ("The finding of 'any severe impairment' is sufficient for the ALJ to proceed to the third step."); *Tuggerson-Brown v. Comm'r of Soc. Sec.*, 572 F. App'x 949, 951 (11th Cir. 2014) ("[I]t is apparent that there is no need for an ALJ to identify every severe impairment at step two."); *Jamison*, 814 F.2d at 588 (noting that the ALJ correctly identified at least one severe impairment and correctly proceeded to step three). So long as the ALJ provides that he has taken all of Plaintiff's impairments into consideration when determining Plaintiff's capacity to work at steps three and beyond, any omission during step two is of no consequence. *Tuggerson-Brown*, 572 F. App'x at 951-52; *Perry v. Astrue*, 280 F. App'x 887, 893-

94 (11th Cir. 2008); *see also Schink*, 2019 WL 4023639, at *15 (holding that an erroneous finding that mental impairments were non-severe could be harmless if the ALJ duly considered mental impairments when assessing his RFC and reached conclusions about mental capabilities that were supported by substantial evidence).

Here, there is substantial evidence in the record that indicates that Plaintiff's hypertension was not severe. In her decision, the ALJ stated that several of Plaintiff's impairments, including hypertension, were not severe because they "do not significantly limit the claimant's ability to perform basic work activities, are well-controlled with medication, and/or are episodic in nature." (Tr. 13). The ALJ thoroughly discussed Plaintiff's medical records from St. Andrew Community Medical Center. (Tr. 17-18). These records reflect that during Plaintiff's examinations during the relevant period, medical professionals often assessed that Plaintiff's hypertension was controlled by her blood pressure medication. (Tr. 558, 563, 560, 665, 675, 682, 685). Thus, there was substantial, objective medical evidence to support the ALJ's conclusion. *See Smith v. Soc. Sec. Admin.*, 272 F. App'x 789, 799 (11th Cir. 2008); *Gibbs v. Barnhart*, 130 F. App'x 426, 430-31 (11th Cir. 2005); *Williams v. Barnhart*, 186 F. Supp.2d 1192, 1197 (N.D. Ala. 2002) (concluding that substantial evidence supported the ALJ's decision when the claimant acknowledged at the hearing that her blood-pressure medication controlled her hypertension).

Even though the ALJ determined that Plaintiff's hypertension was not severe, the ALJ ruled in Plaintiff's favor at Step 2. (Tr. 13). The ALJ found that evidence supported the conclusion that Plaintiff suffered from the following severe impairments: depression; anxiety; borderline intellectual functioning; personality disorder, not otherwise specified; degenerative disc disease of the cervical spine; and obesity. (Tr. 13). The ALJ then proceeded to step three of the analysis. Even assuming that Plaintiff's hypertension was "severe," the ALJ's recognition of it as severe would not have altered the step two analysis. *See Flemming*, 635 F. App'x at 675; *Tuggerson-Brown*, 572 F. App'x at 951-52. Furthermore, assuming for the sake of the argument that the ALJ erred, this error would have been harmless because the ALJ proceeded to the next sequential levels and took into account all of Plaintiff's physical impairments in assessing Plaintiff's RFC. *See Schink*, 2019 WL 4023639, at *15.

### 2. *Fibromyalgia*

In regard to Plaintiff's claim that the ALJ erred in evaluating her fibromyalgia, substantial evidence supports the ALJ's determination that fibromyalgia was not a medically determinable impairment pursuant to SSR 12-2p. In order for fibromyalgia to be a medically determinable impairment, a claimant must submit evidence indicating either:

(1) a diagnosis of fibromyalgia; a history of widespread pain; at least 11 positive tender points on physical examination; and evidence that other disorders that could cause the symptoms or signs were excluded; or

(2) a diagnosis of fibromyalgia; history of widespread pain; repeated manifestations of six or more fibromyalgia, signs, or co-occurring conditions, especially manifestation of fatigue, cognitive or memory problems, waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome; and evidence that other disorders that could cause these repeated manifestations of symptoms, signs, or co-occurring conditions were excluded. SSR 12-2P.

From a review of Plaintiff's medical records, there is no evidence that a physician diagnosed Plaintiff with fibromyalgia. (Tr. 550-53, 558-68, 606-08, 663-65, 667-98, 705-42, 745). Nor is there any indication that Plaintiff ever underwent a tender point examination. (Tr. 550-53, 558-68, 606-08, 663-65, 667-98, 705-42, 745). There is also no evidence that a medical provider had distinguished the alleged fibromyalgia symptoms from those of her medically-documented degenerative disc disease or uterine hypoechaic masses or endometriosis. (Tr. 550-53, 558-68, 561, 606-08, 663-65, 667-98, 705-42, 745). Because there is substantial evidence in the record to support the ALJ's decision, Plaintiff has failed to establish reversible error.

**B.** **Whether the impairments met or were medically equal to the severity of one of the listed impairments**

Plaintiff asserts that the ALJ erred in determining that Plaintiff's physical impairments did not meet a listed impairment because the ALJ did not consider all of her impairments, either individually or combined. She also alleges that the ALJ erred in evaluating Plaintiff's mental impairments.

**1.** *Physical Impairments*

"At step three the ALJ must determine if the applicant has a severe impairment or a combination of impairments, whether severe or not, that qualify as a disability." *Jamison*, 814 F.2d at 588. At this stage, the applicant's medical condition must be considered as a whole. *Id.* (citing *Hudson v. Heckler*, 755 F.2d 781, 785 & n.2 (11th Cir. 1985)); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983)); *see Tuggerson-Brown*, 572 F. App'x at 952 ("While the ALJ did not need to determine whether every alleged impairment was 'severe,' he was required to consider all impairments regardless of severity, in conjunction with one another in performing the latter steps of the sequential evaluation.").

Plaintiff still retains the burden of proof to establish that her impairments restrict her from working. 20 C.F.R. § 404.1512(a), (c) (instructing claimant that the ALJ will consider "only impairment(s) you say you have or about which we receive evidence" and "[y]ou must provide medical evidence showing that you have an impairment(s) and how severe it is during the time you say that you are disabled");

*Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (holding that the claimant bears the burden of proving her disability and is therefore responsible for producing evidence to support of her claim); *Rothfeldt v. Acting Comm'r of the Soc. Sec. Admin.*, 669 F. App'x 964, 967 (11th Cir. 2016) ("In the third step of the sequential evaluation process, *the claimant must provide specific evidence that his impairment meets or medically equals a listed impairment*.") (citing *Sullivan v. Zebley*, 493 U.S. 521, 530, 110 S. Ct. 885, 891(1990) (emphasis added)).

Here, the ALJ thoroughly discussed Plaintiff's medical records and noted that she considered the claimant's impairments under each Listing, but she found that they did not meet listing-level severity. (Tr. 14, 17-18). She also noted that the medical sources did not contain findings equivalent in severity to a listed impairment, either individually or in combination. (Tr. 14, 169-70). Although the ALJ did not make detailed findings as to these impairments, the ALJ's discussion of the relevant medical evidence indicates that the ALJ considered each impairment. *See Prince v. Comm'r*, 551 F. App'x 967, 971 (11th Cir. 2014) (finding no error in the ALJ's failure "to make detailed findings or explicitly discuss whether [the claimant's] impairments met or equaled a Listing" because the finding could be implied from the ALJ's discussion of relevant medical evidence); *Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002); *Hutchinson v. Bowen*, 787 F.2d 1461, 1463 (11th Cir. 1986) (holding that the ALJ implicitly found that the claimant

did not meet a Listing because it was clear from the record that the ALJ had considered the relevant law and evidence).

### 2. *Mental Impairments*

In determining the severity of a claimant's mental impairments, the regulations provide that an ALJ must consider whether the claimant satisfies "paragraph B criteria" and has either one extreme or two marked limitations in a broad area of functioning which are: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; or (4) adapting and managing themselves. *Flemming*, 635 F. App'x at 677.

Here, the ALJ considered Plaintiff's symptoms relating to depression, anxiety, and borderline intellectual functioning. (Tr. 14-15). The ALJ found that Plaintiff had no more than moderate limitations on her ability to understand, remember, or apply information. This finding has ample support from the record. Plaintiff reported that she could follow written instructions, handle her personal care, and take medication without reminders. (Tr. 392, 396, 398). She testified that she could pay bills, count change, handle a savings account, and use a checkbook/money order. (Tr. 51-52, 383, 392).

Additionally, the results from the exams administered by Dr. Boehman also support the ALJ's conclusion. On the Woodcock Johnson III Test of Cognitive Abilities, Wechsler Memory Scale-Fourth Edition, and intelligence tests Plaintiff

scored in the average range for short-term memory, low range for long-term retrieval and process speed, and low average range for verbal ability, cognitive efficiency, comprehension-knowledge and audition process. She also scored in the low average range for visual working memory.

Plaintiff scored extremely low range for auditory memory and immediate memory and borderline in visual memory and delayed memory. But Plaintiff scored in the average range in broad reading and broad written language. Despite her low average range in broad mathematics, she was able to perform simple arithmetic, including subtraction, multiplication, and division. (Tr. 14, 590, 592-93). Additionally, two state psychologists indicated that Plaintiff had only moderate limitations in her ability to understand, remember, or apply information. (Tr. 20, 134, 137-38, 148, 151-52, 168, 171-72, 186, 189-90).

Substantial evidence also supported the ALJ's finding that Plaintiff's depression, anxiety, and personality disorder caused a moderate limitation in her ability to interact with others. Plaintiff reported that she had problems getting along with people, she was an introvert, and people got on her nerves. (Tr. 15, 74, 77, 79, 396). Plaintiff also testified she had been fired from her last job after an altercation with a co-worker. (Tr. 60-61). The ALJ also noted that during her psychological evaluation, Dr. Boehman noticed signs of elevated anxiety throughout the evaluation, and the personality testing indicated that Plaintiff had elevated levels of

depression and anxiety. (Tr. 589, 594). But Dr. Boehman also noted that Plaintiff was calm and friendly during the evaluation. (Tr. 589). Again, both state psychologists indicated that Plaintiff had only moderate limitations in social functioning and interacting appropriately with members of the public. (Tr. 20, 134, 138-39, 148, 152-53, 168, 172-73, 186, 190-91).

In its consideration of concentration and pace, the ALJ's decision was supported by Dr. Boehman's evaluation of Plaintiff. The evaluation reflects that Plaintiff appeared to be fidgety during tasks; however, she was attentive to tasks. (Tr. 589). Additionally, Plaintiff indicated that she could drive, shop, pay bills, count change, handle a saving account, and use a checkbook/money order. (Tr. 50-52, 77, 383, 394). Thus, the ALJ had substantial evidence to determine that Plaintiff was only moderately limited in concentrating, persisting, or maintaining pace. This conclusion is supported by the state psychologists, who opined that Plaintiff has only moderate limitations in concentration and pace. (Tr. 20, 134, 138, 148, 152, 168, 172, 186, 190).

With regard to adapting or managing herself, the ALJ found that Plaintiff had only moderate limitations. Plaintiff reported that she did not handle stress or changes in routine well and that she had daily panic attacks. The ALJ noted, however, that nobody documented panic attacks in Plaintiff's medical records. (Tr. 15). Additionally, Plaintiff claimed that she could handle most of her personal care,

perform light household chores, drive, shop, and handle her finances. (Tr. 393-94, 409). Both state psychologists indicated that Plaintiff would have moderate limitations in responding appropriately to changes in the work setting. (Tr. 20, 139, 153, 172-73, 190-91). The record, therefore, contains substantial evidence to support the ALJ's conclusion.

Additionally, the ALJ considered whether "paragraph C criteria" were satisfied and found that they were not. The ALJ also noted that neither state agency psychological consultant concluded Plaintiff's disability equaled a Listing. (Tr. 15, 134, 186).

Thus, there was substantial evidence in the record for the ALJ's determination that neither Plaintiff's physical impairment nor her mental impairments were sufficiently severe so as to equal a listed impairment.

### C.    <u>Residual Function Capacity (RFC)</u>

Next, Plaintiff asserts that the ALJ erred in her determination of Plaintiff's RFC because: (1) she did not properly evaluate Plaintiff's obesity; (2) she improperly determined the weight of the medical opinions, and (3) she did not take into account Plaintiff's non-exertional limitations in the RFC.

An ALJ's RFC assessment must be based upon all relevant evidence of a claimant's ability to do work despite her impairments. *Phillips*, 357 F.3d at 1238; *Lewis*, 125 F.3d at 1440 (citing 20 C.F.R. § 404.1545(a)).

## 1.  *Obesity*

The record reflects that the ALJ properly considered Plaintiff's obesity in determining Plaintiff's RFC. First, the ALJ considered Plaintiff's obesity and found that it was a severe impairment.[6] (Tr. 13). Additionally, the ALJ noted that "at each step of the sequential evaluation, I have specifically considered the effects of the claimant's obesity under Social Security Ruling 02-1p in formulating the claimant's residual functional capacity." (Tr. 19). The ALJ determined that Plaintiff's obesity and degenerative disc disease limited Plaintiff to medium work. (Tr. 13).

Taken as a whole, the record shows that the ALJ properly evaluated Plaintiff's obesity. *See Castel v. Comm'r of Soc. Sec.*, 355 F. App'x 260, 264 (11th Cir. 2009) (holding that the ALJ did not err when the record reflects that he considered the claimant's obesity, made specific references to SSR-02-1p in his ruling, determined that obesity was a severe impairment, and determined that the obesity did not result in any specific functional limitations); *see also Lewis v. Comm'r of Soc. Sec.*, 487 F. App'x 481, 483 (11th Cir. 2012) (holding that the ALJ properly evaluated claimant's obesity in accordance with SSR 02-1p where the ALJ determined claimant's obesity was a severe impairment but did not meet or equal a listing and then considered claimant's obesity in assessing the RFC).

---

[6] The ALJ noted that, in May 2014, Plaintiff's height was 5 feet and 7 inches and she weighed more than 200 pounds. (Tr. 13).

### 2. *Medical Opinions*

Plaintiff also argues that the ALJ erred in evaluating the medical opinions in the record. Specifically, Plaintiff alleges that the ALJ did not consider and give each opinion weight, did not give controlling weight to her treating physician's opinion, and unduly relied on non-examining physicians over examining physicians. (Doc. 20 at 4, 5-6).

As the finder of fact, the ALJ is charged with the duty to evaluate all of the medical opinions of the record and resolve any conflicts. 20 C.F.R. § 404.1527. In determining the weight of a medical opinion, an ALJ must consider several factors including: (1) whether the physician examined the claimant; (2) treatment relationship; (3) length of the treatment relationship and the frequency of examination; and (4) whether the medical opinion is from a specialist and is related to his area of specialty. *See* 20 C.F.R. § 416.927(c). "An opinion from a treating physician is generally entitled to substantial or considerable weight" while the opinion of a one-time examiner is not entitled to great weight. *MacGregor*, 786 F.2d at 1053; *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1160 (11th Cir. 2004) (per curiam) (citing *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987)). As the Eleventh Circuit recently explained:

> [Treating physicians] are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings

alone or from reports of individual examinations, such as consultative
examinations or brief hospitalizations.

*Schink*, 2019 WL 4023639, at *7 (quoting 20 C.F.R. § 404.1527(c)(2)). Treating

physicians, therefore, are more likely to provide a more complete picture of the

claimant's health history. *Id.*

Plaintiff argues that the ALJ erred by not affording her treating physician's

opinion controlling weight. She fails to identify which treating physician's opinion

the ALJ purportedly minimized, however. There are four psychological opinions in

the record,[7] one from an examining psychologist (Dr. Boehman) and three from state

agency consultants (Dr. Rudmann, Dr. Johnson and Dr. Bauer). From the records, it

does not appear that Dr. Boehman had a treating relationship with Plaintiff. Indeed,

it appears that Plaintiff saw Dr. Boehman once, for a psychological evaluation in

connection to her vocational rehabilitation. A psychologist whom a claimant has

seen only once is not a treating psychologist because one visit is insufficient to create

a treating relationship. *See Huntley v. Soc. Sec. Admin., Comm'r*, 683 F. App'x 830,

832 (11th Cir. 2017) (noting that a physician that conducts only a single examination

is not a treating physician); *see also McSwain*, 814 F.2d at 619. Plaintiff's claim that

---

[7] The Eleventh Circuit has applied to treating psychologists the presumption that the
opinion of a treating physician ordinarily should be afforded considerable weight.
*See Vuxta v. Comm'r of Soc. Sec.*, 194 F. App'x 874, 876 (11th Cir. 2006).

the ALJ erred by not crediting Plaintiff's treating physician's opinion, therefore, lacks merit.

The record also indicates that the ALJ properly applied the regulations in determining the weight for each of the medical opinions she considered. In her decision, the ALJ thoroughly discussed Dr. Boehman's evaluations of Plaintiff, including the results of each psychological test administered to Plaintiff. (Tr. 18-19). The ALJ found that Dr. Boehman's opinion was entitled to great weight because he had the opportunity to thoroughly examine and test Plaintiff. *Huntley*, 683 F. App'x at 832 (citing *Edwards v. Sullivan*, 937 F.2d 580, 584-85 (11th Cir. 1991)); *Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985) (citing *Oldham v. Schweiker*, 660 F.2d 1078, 1084 (5th Cir. 1981) (Unit B)). The ALJ also noted that Dr. Boehman is a specialist in his field. *See Forsyth v. Comm'r of Soc. Sec.*, 503 F. App'x 892, 893 (11th Cir. 2013) (noting that the regulation requires that opinions of specialists on issues within their areas of expertise should be given more weight than non-specialists). Thus, the ALJ's determination that Dr. Boehman's opinion was entitled to substantial weight was proper.

The ALJ also properly determined that the opinions of the three state psychologists were entitled to substantial weight. (Tr. 20). *See* Social Security Ruling 96-6p (noting that state agency medical consultants are "highly qualified physicians who are experts in the evaluation of the medical issues in disability claims

under the Act" as such, their opinions regarding an individual's RFC are entitled to consideration and weight); *see also* 20 C.F.R. § 404.1527(e)(2). The ALJ found that the three state agency consultants were entitled to great weight because their opinions were consistent with the record. *See Kemp v. Astrue*, 308 F. App'x 423, 427 (11th Cir. 2009) ("the weight to be given [to] a non-examining physician's opinion, depends, among other things, on the extent on which it is supported by clinical findings and is consistent with other evidence."). Specifically, she found that the agency's reviewing psychological consultants' opinions were consistent with the results from Dr. Boehman's testing and examination of Plaintiff.

Additionally, the ALJ found that their opinions were consistent with Plaintiff's medical records, which indicated that Plaintiff's anxiety and depression were generally managed by taking Celexa. (Tr. 20, 671, 678, 681, 684, 686, 688). As to Dr. Johnson's opinion regarding Plaintiff's physical limitations, the ALJ noted that this opinion was consistent with the objective medical evidence from St. Andrew Community Medical Center. Specifically, the ALJ found that Dr. Johnson's opinion was consistent with Plaintiff's medical exams and the medical evidence regarding Plaintiff's obesity, degenerative disc disease of the cervical spine, and chronic pain management. (Tr. 558-59, 561-63, 602-23, 664, 671, 678, 684, 686, 688).

Accordingly, Plaintiff has not shown that the ALJ erred in weighing the medical opinions.

### 3.     *Non-exertional Limitations*

Plaintiff also argues that the ALJ failed to properly take into account Plaintiff's non-exertional limitations in her RFC calculation. The ALJ properly determined that Plaintiff had moderate limitations in social functioning. *See supra* Part V.B.2. The ALJ also properly determined that Plaintiff had moderate limitations in: (1) maintaining concentration, persistence, or pace; and (2) in understanding, remembering or applying information. *See supra* Part V.B.2. Because the ALJ determined that Plaintiff had moderate limitations in these broad categories, the ALJ concluded that Plaintiff had the residual functional capacity to perform medium work that involved only occasional contact with the general public and frequent interaction with co-workers.

The ALJ also found that Plaintiff was limited to performing work that required simple, routine tasks and making simple work-related decisions. Thus, the ALJ properly accounted for Plaintiff's moderate limitation in her interactions with others and maintaining concentration, persistence, or pace. *See Washington v. Soc. Sec. Admin*, 503 F. App'x 881, 883 (11th Cir. 2013) (noting that an ALJ properly accounted for moderate limitations in social functioning and maintain concentration, persistence, or pace by limiting jobs to those that involved only occasional

interaction with the general public and required simple routine repetitive tasks and only occasional changes in the work setting, judgment or decision making). Plaintiff has not shown that the ALJ erred.

### D.   Alleged Failure to Develop the Record

Plaintiff next contends that the Defendant erred in failing to develop the record. (Doc. 20 at 3, 9). Specifically, Plaintiff claims that ALJ did not subpoena or allow Plaintiff to cross-examine medical professionals, and Defendant did not attempt to obtain an updated residual functional capacity assessment. (Doc. 20 at 3, 9).

"Because a hearing before an ALJ is not an adversary proceeding, the ALJ has a basic obligation to develop a full and fair record," regardless of whether the applicant is represented by counsel. *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981) (citing *Thorne v. Califano*, 607 F.2d 218, 219 (8th Cir. 1979)). The ALJ's duty to develop the record is increased only when the claimant is unrepresented and the right to representation has not been waived. *See Graham v. Apfel*, 129 F.3d 1420, 1422-23 (11th Cir. 1997); *Brown v. Shalala*, 44 F.3d 931, 934-35 (11th Cir. 1995) (citing *Smith v. Schweiker*, 677 F.2d 826, 829 (11th Cir. 1982)). When an ALJ has a heightened duty to develop the record, a remand is not warranted for a failure to develop the record unless there is a showing of prejudice. *Graham*, 129 F.3d at 1423. To show prejudice, a plaintiff must at least demonstrate "that the ALJ did not have

all of the relevant evidence before him in the record (which would include relevant testimony from claimant), or that the ALJ did not consider all of the evidence in reaching his decision." *Kelly v. Heckler*, 761 F.2d 1538, 1539 (11th Cir. 1985) (citing *Smith*, 677 F.2d at 830). In other words, Plaintiff must show that there are evidentiary gaps in the record which resulted in "unfairness or clear prejudice." *Graham*, 129 F.3d at 1423; *Brown*, 44 F.3d at 935; *Edwards*, 937 F.2d at 586.

Here, Plaintiff was represented by counsel at the hearing level. Thus, the ALJ did not have a heightened duty to develop the record and the burden was on Plaintiff (and her counsel) to submit evidence regarding Plaintiff's disability. *See* 20 C.F.R. § 416.912. Additionally, Plaintiff failed to establish prejudice. There was sufficient evidence in the record to support the ALJ's determination of Plaintiff's RFC.

First, the ALJ's determination of RFC was supported by results from exams that were administered by Dr. Boehman, a consultative mental health specialist. These examinations indicated that Plaintiff had limitations on her concentration (she was fidgety but attentive to tasks), understanding (she had borderline-intellectual functioning), memory (she did not struggle with immediate recall and was successful with delayed recall, but she was borderline in visual and delayed memory), and getting along with others (she had symptoms of elevated anxiety, but was calm and friendly). (Tr. 589-96). Dr. Boehman also diagnosed Plaintiff with depression and anxiety. (Tr. 595). Additionally, the ALJ had the benefit of Plaintiff's testimony and

a report from Plaintiff's husband which indicated that Plaintiff could read fairly well (although some words in newspapers might confuse her), she can make change and handle a checkbook/savings account and other personal finances, but people sometimes annoy her. (Tr. 50, 51-52, 77, 383, 394, 396).

The ALJ also possessed medical records from Plaintiff's treatment providers in 2015-2016. These records reflected that Plaintiff's depression and anxiety were generally managed with Celexa. (Tr. 671, 678, 681, 684, 686, 688). These records also reflected that Plaintiff enjoyed a full range of motion in her extremities, full grip strength, and managed her chronic pain with over-the-counter medication. (Tr. 671-72, 674-75, 678-79, 681-82, 684-89, 692-93, 695-97). Thus, there was ample evidence in the record for the ALJ to make an informed decision regarding the relevant timeframe for Plaintiff's disability claim. Plaintiff has not shown any prejudice that would warrant remand for Plaintiff to question Dr. Rudmann, Dr. Bauer, Dr. Boehman, and Dr. Johnson, or to have the ALJ seek an additional residual functional capacity assessment.

### E.    Plaintiff's Subjective Complaints

Plaintiff next argues that the ALJ erred in the weight she assigned to her husband's testimony and Plaintiff's subjective complaints regarding her pain.

Section 416.929 provides that, when determining whether a claimant is disabled, the commissioner should "consider all [of the claimant's] symptoms, including pain, and the extent to which [her] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R § 416.929. The Eleventh Circuit has adopted the following additional pain standard:

> There must be evidence of an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from the condition or (2) the objectively determined medical condition must be of severity which can reasonably be expected to give rise to the alleged pain.

*Hand v. Heckler*, 761 F.2d 1545, 1549 (11th Cir. 1986); *see also Wilson*, 284 F.3d at 1225.

"[B]oth the regulations and the *Hand* standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, but neither requires objective proof of pain itself." *Elam*, 921 F.2d at 1216. The Eleventh Circuit has held that "[p]ain alone can be disabling, even when its existence is unsupported by objective evidence." *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992) (citing *Walker*, 826 F.2d at 1003). The absence of evidence to support claims of severe pain is a factor that can be considered by ALJs, however. *Id.*; *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983).

Notably, "[i]f proof of disability is based upon subjective evidence and a credibility determination is, therefore, crucial to the decision, the ALJ must either

explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." *Foote*, 67 F.3d at 1562 (citation and quotation marks omitted); *MacGregor*, 786 F.2d at 1054 ("If the Commissioner refuses to credit" the subjective testimony of the plaintiff concerning pain "he must do so explicitly and give reasons for that decision. Where he fails to do so we hold as a matter of law that he has accepted the testimony as true."). The reasons articulated by the ALJ must be based upon substantial evidence. *Jones v. Dep't. of Health and Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991).

In the present case, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. (Tr. 14). But the ALJ concluded that Plaintiff's subjective testimony regarding the intensity, persistence, and limiting effects of the symptoms were not entirely consistent with the medical evidence. (Tr. 17, 20-21). In determining that Plaintiff's subjective complaints of pain were not entirely supported by the evidence, the ALJ properly noted that Plaintiff consistently had stable examination findings and that her medical record did not document neck pain. (Tr. 671-72, 674-75, 678-79, 681-82, 684-89, 692-93, 695-97); *Marbury*, 957 F.2d at 839 (absence of objective proof of pain is a factor that may be considered by the ALJ).

Additionally, Plaintiff's medical records show that Plaintiff used over-the-counter medication to treat her chronic pain. (Tr. 671-72, 674-75, 678-79, 681-82,

684-89, 692-93, 695-97). The ALJ could infer from this that Plaintiff's pain was not as severe as she claimed. *See Wolfe v. Chater*, 86 F.3d 1072, 1078 (11th Cir. 1996) (holding that an ALJ may consider treatment that is "entirely conservative in nature" in discrediting a claimant's testimony); *Pennington v. Comm'r of Soc. Sec.*, 652 F. App'x 862, 873 (11th Cir. 2016) (same). The ALJ also found that Plaintiff reported being able to work with her mental health limitations. (Tr. 20). *See Castel*, 355 F. App'x at 264 n.9 (noting that the plaintiff's ability to perform work duties with current impairments supports the ALJ's finding that the impairment did not substantially affect plaintiff's functional capacity); *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005); *Ellison*, 355 F.3d at 1275-76. That admission further undercuts Plaintiff's allegation of severe pain and mental impairments.

To the extent Plaintiff alleges that it was error for the ALJ to discount Plaintiff's credibility on the basis of Plaintiff's limited daily activities, Plaintiff has not shown reversible error. "A claimant's admission that she participates in daily activities for short durations does not necessarily disqualify the claimant from disability benefits, but that does not mean it is improper for the ALJ to consider a claimant's daily activities at all." *Robinson v. Astrue*, 365 F. App'x 993, 998 (11th Cir. 2010). In fact, the regulations *require* an ALJ to consider a claimant's daily activities in determining the claimant's ability to work. *See* 20 C.F.R. § 404.1529(a), (c); *see also Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987). Thus, an ALJ

must consider daily activities—in addition to the objective medical evidence—in evaluating Plaintiff's subjective complaints. Because the record as a whole supports the ALJ's determination that Plaintiff's subjective complaints were not entirely credible, Plaintiff has not shown reversible error.

Plaintiff also argues that the ALJ improperly discredited the testimony of her husband and other third-party reports. (Doc. 20 at 6). Plaintiff again has failed to demonstrate reversible error by the ALJ.

Under the regulations, third-party testimony by a lay-person is considered "other source" testimony. 20 C.F.R. § 404.1513. This evidence may be used in addressing the nature and severity of an impairment. *Id.* In evaluating this evidence, the ALJ should consider whether the evidence is consistent with the other evidence in the case, the nature and extent of the claimant's relationship to a witness, and any other factors that tend to support or refute the evidence. SSR 06-3p. As the Eleventh Circuit has noted:

> The testimony of family members is evidence of a claimant's subjective feeling of pain. *See Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983). Even if the ALJ fails to make an explicit credibility determination as to a family member's testimony or statements, however, we will not find error if the credibility determination was implicit in the rejection of the claimant's testimony. *Id.* at 1254-55 (citing *Allen v. Schweiker*, 642 F.2d 799 (5th Cir. 1981)).

*Osborn v. Barnhart*, 194 F. App'x 654, 666 (11th Cir. 2006). It is clear that the ALJ considered these reports. (Tr. 20). Although she does not discuss these records in great detail, the ALJ noted that the reports entailed information from Plaintiff's husband, and she found that these records were entitled to partial weight because the reports were generally consistent with the other evidence in the record. Because the husband's testimony is similar to Plaintiff's reports, it is implicit in the ALJ's credibility determination of Plaintiff that the ALJ also rejected the husband's reports to the extent they were inconsistent with the objective medical evidence and other evidence in the record. Because there was ample medical evidence of the extent of Plaintiff's impairments, the ALJ was entitled to give the Plaintiff's reports only partial weight.

### F.    Past Work and Vocational Expert's Testimony

Plaintiff next argues that the ALJ erred in determining that Plaintiff could return to her previous work and that there were sufficient other jobs in the national economy. Plaintiff's first argument is that her RFC should be limited to "less than sedentary," and, therefore she is incapable of performing work at a greater level of exertion. As discussed above, the ALJ's determination of Plaintiff's RFC is supported by substantial evidence.

Plaintiff also argues that the ALJ improperly relied on the medical vocational guidelines. An ALJ may rely on the medical vocational guidelines in determining

whether a claimant is disabled. The ALJ, however, must consult a Vocational Expert (VE) when "the claimant's exertional limitation prevent the claimant from performing a full range of employment" at the specified exertional level defined in the claimant's RFC. *Phillips*, 357 F.3d at 1242. Additionally, the ALJ must consult with a VE if the ALJ determines that the claimant's non-exertional limitations significantly limit her basic work skills. *Id.* at 1243.

Here, the ALJ held that the "claimant's ability to perform all or substantially all of the requirements of [a medium exertional] level of work has been impeded by additional limitations." (Tr. 22). Therefore, the ALJ relied on the testimony of a VE regarding the extent of these limitations on Plaintiff's ability to perform work and not on the Medical-Vocational Rule 204.18 and Rule 203.11. (Tr. 22, 81-86). Plaintiff's argument that the ALJ improperly relied on the medical vocational guidelines, therefore is simply incorrect.

Additionally, Plaintiff alleges that the ALJ erred in relying on the VE's testimony because she did not pose a hypothetical that encompassed all of her limitations, and the VE's testimony conflicted with the Dictionary of Occupational Titles (DOT). "An ALJ may rely solely on the testimony of a vocational expert in determining whether work is available in significant numbers in the national economy that a claimant is able to perform. . . . For the testimony of a vocational expert to constitute substantial evidence, 'the ALJ must pose a hypothetical question

which comprises all of the claimant's impairments.'" *Miller v. Comm'r of Soc. Sec.*, 246 F. App'x 660, 661 (11th Cir. 2007) (quoting *Jones v. Apfel*, 190 F.3d 1224, 1229, 1230 (11th Cir. 1999)). The ALJ also has an affirmative duty "to identify any 'apparent' conflict" between the VE's testimony and the DOT and "to resolve it." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1362 (11th Cir. 2018).

Plaintiff has not identified how the VE's testimony conflicted with the DOT. Although such a perfunctory argument is generally waived, it is worth noting that the ALJ specifically stated that "[p]ursuant to SSR 00-4p, [she] determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles." (Tr. 22). This court also reviewed the Dictionary of Occupational Titles and does not perceive a conflict between the VE's testimony and the DOT.

Plaintiff also has failed to show reversible error regarding the ALJ's hypothetical question to the VE. The ALJ's hypothetical question appropriately addressed each limitation. (Tr. 81-82, 83). Specifically, the ALJ asked the VE to consider an individual that:

(1) was the same age, had the same education, and past work experience as Plaintiff;

(2) was limited to medium work;

(3) could climb ramps and stairs frequently;

(4) never climb ladders, ropes, or scaffolds;

(5) balance, stoop, and crawl frequently;

(6) could never work at unprotected heights;

(7) limited to performing simple, routine tasks;

(8) can have frequent contact with coworkers, but only occasional contact with the public; and

(9) is limited to simple, work-related decisions.

(Tr. 81-82, 83). These limitations are the exact limitations contained in Plaintiff's RFC, and the ALJ appropriately accounted for Plaintiff's impairments. *See supra*; *Washington*, 503 F. App'x at 883. Therefore, the ALJ was entitled to rely on the VE's testimony, and Plaintiff has failed to establish any error.

Plaintiff also makes a cursory argument that the ALJ erred in determining that Plaintiff could return to her past work. (Doc. 20). A claimant bears the burden of proving that she cannot perform past relevant work, not merely that she cannot return to her prior employment. *Jackson v. Bowen*, 801 F.2d 1291, 1293 (11th Cir. 1986) (quoting *DeLoatche v. Heckler*, 715 F.2d 148, 151 (4th Cir. 1983)); *see Martin v. Sullivan*, 901 F.2d 650, 653 (8th Cir. 1990); *Studaway v. Sec'y of Health & Human Servs.*, 815 F.2d 1074, 1076 (6th Cir. 1987); *Villa v. Heckler*, 797 F.2d 794, 798 (9th Cir. 1986) (holding "[the] claimant has the burden of proving an inability to return to his former *type of work* and not just to his former job"). Thus, "[i]f a Social

Security claimant 'can do [the] kind of work' he had done in the past, he will be found not disabled." *Jackson*, 801 F.2d at 1293 (citing 20 C.F.R. §§ 404.1520(e), 416.920(e) (1986)). Plaintiff has failed to carry her burden of demonstrating that she cannot perform her past relevant work, either as she performed it in the past, or as it was performed in the national economy. (Doc. 20; Tr. 81-83).

Furthermore, assuming that Plaintiff had shown that she cannot do housekeeping work, the ALJ also found that—based on Plaintiff's RFC—there were sufficient jobs in the national economy that Plaintiff could perform. (Tr. 22). Plaintiff has not challenged that decision. Thus, the ALJ's alternative finding was sufficient to support a decision of "not disabled." *See MacGregor*, 786 F.2d at 1052; *Hale*, 831 F.2d at 1011.

Accordingly, Plaintiff has not established that the ALJ erred at Step Four of the analysis by relying on the testimony of the VE.

### G.    Reopening a Prior Determination

Plaintiff next argues that the ALJ erred in failing to reopen the agency's September 22, 2010, and August 2, 2013, determinations denying Plaintiff's prior applications for DIB and SSI. (Doc. 20 at 9-10).

If a claimant does not request further review of an unfavorable decision in the administrative process, the claimant loses her right to such review and the determination becomes final. *See* 20 C.F.R. §§ 404.987(a), 416.1487(a). Within

twelve months of the notice of the initial decision, it can be reopened for any reason. 20 C.F.R. §§ 404.988(a), 416.1488(a). A decision can be reopened for "good cause" within four years in the case of Title II benefits, and within two years in the case of Title XVI benefits. 20 C.F.R. §§ 404.988(b), 416.1488(b). "Good cause" exists if: "(1) New and material evidence is furnished; (2) A clerical error in the computation or recomputation of benefits was made; or (3) The evidence that was considered in making the determination or decision clearly shows on its face that an error was made." 20 C.F.R. §§ 404.989(a), 416.1489(a).

As a general rule, federal courts lack jurisdiction to review an administrative decision not to reopen a previous claim for benefits. *See Califano v. Sanders*, 430 U.S. 99, 107-09, 97 S. Ct. 980, 985-86 (1977). "[A] decision refusing to reopen an earlier application is considered an interim decision not reviewable under §405(g)." *Cash v. Barnhart*, 327 F.3d 1252, 1256 (11th Cir. 2003) (citing *Loudermilk v. Barnhart*, 290 F.3d 1265, 1268 (11th Cir. 2002)); *see Byam v. Barnhart*, 336 F.3d 172, 180 (2d Cir. 2003) ("The Commissioner's decision not to reopen a prior determination is not a final decision for the purposes of § 405(g), and thus is generally unreviewable even if there was a hearing in the case.") (citation omitted).

Nevertheless, a federal court may review a decision not to reopen a disability determination if the Commissioner has either constructively reopened the case or if a claimant has been denied due process. *Byam*, 336 F.3d at 180. A determination

shall be deemed "reopened" if it is "reconsidered on the merits to any extent and at any administrative level." *Cherry v. Heckler*, 760 F.2d 1186, 1189 (11th Cir. 1985) (quoting *McGowan v. Harris*, 666 F.2d 60, 65 (4th Cir. 1981)). Review by a district court also is permissible in "rare instances when the Secretary's denial of a petition to reopen is challenged on constitutional grounds." *Califano*, 430 U.S. at 109, 97 S. Ct. at 986; *see Sherrod v. Chater*, 74 F.3d 243, 245 (11th Cir. 1996); *Passopulos v. Sullivan*, 976 F.2d 642, 647 (11th Cir. 1992); *Callis v. Dep't. of Health & Human Servs.*, 877 F.2d 890, 891 (11th Cir. 1989). Accordingly, in the absence of either a constructive reopening or a constitutional claim, a district court lacks jurisdiction to review a decision not to reopen. *Latona v. Schweiker*, 707 F.2d 79, 81 (2d Cir. 1983).

Plaintiff asserts that this court has jurisdiction to review the ALJ's denial to reopen the previous decision because: (1) the ALJ constructively reopened the earlier determinations; and (2) the ALJ erred in not reopening the prior determination because there is a colorable constitutional claim.

As to her claim that the ALJ constructively reopened the earlier determinations, Plaintiff asserts that the ALJ considered all of the evidence submitted in the prior applications. (Tr. 20 at 9). Plaintiff is simply incorrect. A review of the record shows that the ALJ did not conduct a review of the records from Plaintiff's prior cases and did not reconsider the merits of the earlier determinations.

As to her argument about a colorable constitutional claim, Plaintiff asserts that

her mental impairments prevented her from understanding the "inherently defective nature of SSA's notice of denying the prior claim." (Doc. 20 at 9). Plaintiff relies on *Elchediak v. Heckler*, 750 F.2d 892 (11th Cir. 1985). In *Elchediak*, the Eleventh Circuit held that a colorable constitutional claim is present if: (1) plaintiff suffers from a medically-documented mental illness which serves as the basis for his disability claim; (2) on his first application he was without assistance of counsel or other suitable representation; and (3) he cannot assert a new claim for benefits because he now lacks insured status. *Id.* at 894-95; *see Sherrod*, 74 F.3d at 246.

Plaintiff's argument about a constitutional claim fails for two reasons. First, she was represented by counsel at both of the earlier determinations. (Tr. 93, 113). Second, it appears from the records that these claims were based on Plaintiff's physical impairments, not her mental impairments. (Tr. 93-101, 113-23). Furthermore, Plaintiff fails to identify how the notices of denial were sufficiently "defective" as to raise a constitutional claim. Additionally, she has not shown that she detrimentally relied on the notices. *Loudermilk*, 290 F.3d at 1268-69 (holding that a claimant must demonstrate detrimental reliance on a defective notice). Accordingly, the court lacks jurisdiction to review the ALJ's denial to reopen the prior determinations.

**H.    New Evidence**

Next, Plaintiff argues that the Commissioner's decision should be reversed because she supplied new evidence that indicates she is disabled.[8]

Generally, a claimant may present new evidence at each stage of the administrative proceeding, including to the district court. *Ingram*, 496 F.3d at 1260-61. In order to more fully develop the record, 42 U.S.C. § 405(g) permits a district court to remand an application for benefits to the Commissioner by two methods, which are commonly referred to as "sentence four" and "sentence six" remands. *See Ingram*, 496 F.3d at 1261. Sentence six of section 405(g) provides that:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g). The Eleventh Circuit has stated that sentence six is "the sole means for a district court to remand to the Commissioner to consider new evidence presented for the first time in the district court." *Id.* at 1267-68; *see Sullivan v. Finkelstein*, 496 U.S. 617, 626, 110 S. Ct. 2658, 2664 (1990) (holding that remand pursuant to the sixth sentence of § 405(g) is "appropriate when the district court

---

[8] Plaintiff suggests that her new evidence pertains to mental health treatment she received on May 3, 2017, and also entails medical records relating to Plaintiff falling out of bed in November 2017, which resulted in an injury to her shoulder. (Doc. 20 at 10).

learns of evidence not in existence or available to the claimant at the time of the administrative proceeding that might have changed the outcome of that proceeding"); *Milano v. Bowen*, 809 F.2d 763, 766 (11th Cir. 1987); *Caulder v. Bowen*, 791 F.2d 872, 876 (11th Cir. 1986); *Cherry*, 760 F.2d at 1192.

"Not every discovery of new evidence, even if relevant and probative, will justify a remand to the Secretary," however, because "some evidence is of limited value and insufficient to justify the administrative costs and delay of a new hearing." *Caulder*, 791 F.2d at 876. Thus, in order to establish that remand is warranted pursuant to sentence six of § 405(g), a Plaintiff must establish that: (1) the evidence is new and noncumulative; (2) the evidence is material such that a reasonable probability exists that it would change the administrative result; and (3) there was good cause for Plaintiff's failure to submit the evidence at the administrative level. *See Falge*, 150 F.3d at 1323; *Caulder*, 791 F.2d at 877; *Cherry*, 760 F.2d at 1192.

Evidence is material when a reasonable probability exists that it would change the administrative result. *Falge*, 150 F.3d at 1323; *Caulder*, 791 F.2d at 877; *Cherry*, 760 F.2d at 1192. Thus, to be material the new evidence must be chronologically relevant. *See Wilson v. Apfel*, 179 F.3d 1276, 129 (11th Cir. 1999) ("We review the decision of the ALJ as to whether the claimant was entitled to benefits during a specific period of time, which period was necessarily prior to the

date of the ALJ's decision."). Notably, the materiality requirement is not rebutted by the Commissioner's statement that the new evidence would not ultimately change the ALJ's decision, because such a statement is not in the certified record, and therefore, carries little weight. *Caulder*, 791 F.2d at 877; *Cherry*, 760 F.2d at 1194.

As to Plaintiff's new evidence regarding shoulder impingement syndrome, Plaintiff has failed to show that this evidence is chronologically relevant to the period at issue. Plaintiff asserts that in November 2017—approximately three months after the ALJ issued her final decision—she fell from her bed and injured her shoulder. A physician later diagnosed her with shoulder impingement syndrome. Because this impairment appears to have developed after the ALJ's decision, this evidence does not appear temporally relevant. Therefore, Plaintiff has not met her burden of showing that this evidence is material and warrants remand.

Regarding Plaintiff's medical records from St. Andrew Community Medical Center, Plaintiff has failed to show that these records are non-cumulative and material. Plaintiff asserts that the records are from a mental health specialist that she began to see on a monthly basis starting on May 3, 2017. Plaintiff has not attached these records for the court's review nor indicated how these records are either non-cumulative of the records already before the ALJ or likely to change the administrative proceeding below. Accordingly, Plaintiff has failed to meet her

burden to show that this matter should be remanded for the consideration of this new evidence.

## I.     Another Agency's Alleged Determination of Disability

Plaintiff also contends that "the defendant erred in not affording appropriate weight to the finding of other agencies regarding disability." (Doc. 20 at 7). Although Plaintiff does not provide a citation to another agency's finding that Plaintiff is disabled, the court notes that the record contains a "Order for Release from Liability from All Worker's Compensation Benefits," dated July 14, 2014, which was issued by a Judge of Compensation Claims of the Florida Division of Administrative Hearings, Panama City District Office. (Tr. 289-90).

The Commissioner of the Social Security Administration ultimately must make a disability determination based on social security law, not the rules of other federal or state agencies. 20 C.F.R. §§ 404.1504, 416.904; *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x. 935, 939-40 (11th Cir. 2011); *Bloodsworth*, 703 F.2d at 1241. Nevertheless, a finding by an agency that a claimant is disabled generally is entitled to great weight. *Bloodsworth*, 703 F.2d at 1241. Therefore, although the findings of other agencies are not binding on the Commissioner, evidence of a disability decision by another agency cannot be ignored. *See Falcon v. Heckler*, 732 F.2d 827, 831 (11th Cir. 1984) (holding that similarity between Florida workers compensation

disability law required that the ALJ give "proper" weight to the Florida determination).

Here, Plaintiff's "Order for Release from Liability" does not contain any finding that the Plaintiff is disabled, much less that she is mentally or physically disabled. It also does not include any discussion of the extent of any alleged disability or a basis for concluding that Plaintiff suffers from a disability. (Tr. 289-90). The order merely notes that the parties agreed to settle the case for $5,000.00. (Tr. 289-90). Because this settlement agreement does not contain any finding or determination that Plaintiff is disabled, the ALJ did not err in failing to discuss this document.

## J.     **Miscellaneous Undeveloped Arguments**

Finally, Plaintiff has raised several arguments relating to her impairments that do not include citations to the record and which are undeveloped by Plaintiff.[9] A social security claimant bears the burden of proving that she is disabled, and, consequently, she is responsible for pointing to evidence in support of her claim. *Ellison*, 355 F.3d at 1276; *Chereza v. Comm'r of Soc. Sec. Admin.*, 379, F. App'x

---

[9] For instance, Plaintiff asserts (1) "the Defendant erred in determining that the Plaintiff's impairments did not/would not last twelve (12) months;" (2) "the Defendant erred in determining that the Plaintiff's condition had medically improved;" (3) and Defendant erred in "finding that plaintiff was non-compliant with prescribe[d] treatment" or considering "all possible reasons for Plaintiff's non-compliance" with the prescribed treatment. (Doc 20 at 5, 7).

934, 941 (11th Cir. 2010) (noting that "the claimant bears the burden of producing evidence of her disability"); *Babineaux v. Heckler*, 743 F.2d 1065, 1067 (5th Cir. 1984) ("The claimant bears the burden of proving that he is disabled . . . ."). The Supreme Court has held that it is reasonable "to require the claimant, who is in a better position to provide information about his own medical condition, to do so." *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 2294 n.5 (1987).

By failing to cite to the record and develop these arguments, Plaintiff has failed to carry her burden of showing that the ALJ lacked substantial evidence. *See N.L.R.B. v. McClain of Ga., Inc.*, 138 F.3d 1418, 1422 (11th Cir. 1998) ("Issues raised in a perfunctory manner, without supporting arguments and citation to authorities, are generally deemed to be waived."); *Vandenboom v. Barnhart*, 421 F.3d 745, 750 (8th Cir. 2005) (rejecting a social security claimant's claims of error because the claimant provided "no analysis of the relevant law or facts" that would cast doubt on the existence of substantial evidence supporting the ALJ's finding). This court specifically instructed the parties to provide citations to the administrative record and to authorities in support of a party's position. (Doc. 19 at 1). Additionally, it is evident that the ALJ did not make the adverse findings and determinations that Plaintiff alleges in her undeveloped arguments. (Tr. 10-23). Accordingly, Plaintiff has failed to demonstrate that the ALJ lacked substantial evidence for any of her conclusions.

## VI. Conclusion

For the reasons set forth above, it is **ORDERED:**

1.      The decision of the Commissioner is **AFFIRMED,** and this action is **DISMISSED.**

2.      **FINAL JUDGMENT** is entered, pursuant to sentence four of 42 U.S.C. § 405(g), **AFFIRMING** the decision of the Commissioner.

3.      The clerk of the court is directed to close the case file.

**SO ORDERED** this 9th day of September, 2019.

/s/ *Michael J. Frank*
**Michael J. Frank**
**United States Magistrate Judge**